APRIL L. HOLINGSWORTH (Bar No. 9391)
KATIE PANZER (Bar No. 16919)
WHITNEY NELSON (Bar No. 19031)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com
whitney@aprilhollingsworthlaw.com
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **JOSCELIN THOMAS,**<br><br>Plaintiff,<br><br>vs.<br><br>**DAVIS SCHOOL DISTRICT, a political subdivision of the State of Utah; HEIDI ALDER, in her individual and official capacities; SUZI JENSEN, in her individual and official capacities; FIDEL MONTERO, in his individual and official capacities;**<br><br>Defendants. | **COMPLAINT**<br>**(Jury Demand)**<br><br>Case No. 2:24-cv-00019<br><br>Judge |

Plaintiff Joscelin Thomas ("Dr. Thomas" or "Plaintiff"), by and through undersigned counsel, hereby brings the following Complaint against Davis School District ("the District"), Heidi Alder, Suzi Jensen, and Fidel Montero (collectively, "Defendants) as follows:

## NATURE OF THE CASE

This is an action for damages due to discrimination in employment by Defendants based on race, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

## PARTIES, JURISDICTION, AND VENUE

1. Dr. Thomas is an individual residing in Salt Lake County, Utah.

2. Davis School District is a political subdivision of the State of Utah. At all relevant times, the District was Dr. Thomas' employer.

3. Defendant Heidi Alder is an individual who, on information and belief, resides in the State of Utah.

4. Defendant Suzi Jensen is an individual who, on information and belief, resides in the State of Utah.

5. Defendant Fidel Montero is an individual who, on information and belief, resides in the State of Utah.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331.

7. Venue is proper in this Court pursuant to 28 U.S.C § 1391(b), because all the acts and employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Utah and all Defendants are residents of Utah.

# GENERAL ALLEGATIONS

**The Department of Justice Investigates the District**

1. In 2019, the Department of Justice ("DOJ") investigated the District for its "persistent failures to respond to reports of race-based harassment of Black and Asian-American students by district staff and other students."[1]

2. The DOJ's investigation revealed "hundreds of documented uses of the N-word, among other racial epithets, derogatory racial comments, and physical assaults targeting district students at dozens of schools." *Id.*

3. The DOJ also found that the District "disciplined Black students more harshly than their white peers for similar behavior." *Id.*

4. As a result of the DOJ's investigation, the District and the DOJ entered into a settlement agreement to address the racially hostile environment the District created for its students.

5. Under the terms of the settlement agreement, the District was required to create an Office of Equal Opportunity ("OEO") in order to receive, investigate, and address complaints of racial harassment and discrimination.

6. The settlement agreement required the District to hire a Director of the OEO, three District Coordinators, and five School Coordinators.

---

[1] Press Release, United States Department of Justice, Justice Department Reaches Settlement to Remedy Severe Racial Harassment of Black and Asian-American Students in Utah School District (October 21, 2021) (available at: https://www.justice.gov/opa/pr/justice-department-reaches-settlement-remedy-severe-racial-harassment-black-and-asian)

**The District Hires Dr. Thomas**

7. Dr. Thomas holds a Ph.D. in Educational Leadership from Keiser University. Dr. Thomas has over 16 years of experience working in education, with six of those years in leadership or administrator positions.

8. In June of 2022, the District offered Dr. Thomas a position as a School Coordinator in the OEO. Pursuant to District policy, Dr. Thomas was hired as a Provisional Employee on a one-year contract.

9. Under the DOJ agreement, School Coordinators investigated and responded to complaints of racial harassment and discrimination received by the OEO.

10. Dr. Thomas is a Black woman. From the beginning of her employment, Dr. Thomas was treated differently than her lighter-skinned and non-Black co-workers and was subject to a hostile work environment by her coworkers.

11. A few days prior to Dr. Thomas starting, the District "promoted" her to District Coordinator.

12. As a District Coordinator, Dr. Thomas was supposed to supervise a team of School Coordinators.

13. District Coordinators also investigated complaints of race discrimination that were "elevated" because they involved reoccurring harassment, physical harm or threats of physical harm, or allegations of discrimination against administrators.

14. The other District Coordinators, Michelle Medina and Caray Long, each had two School Coordinators they supervised and could assign cases to, whereas Dr. Thomas only had one—even though she was assigned more cases than Ms. Medina or Ms. Long.

15. Despite Dr. Thomas' repeated requests, the District denied Dr. Thomas opportunities for training that other District Coordinators were provided.

    a. Ms. Medina and Ms. Long were both provided with Title IX and Diversity, Equity, and Inclusion ("DEI") trainings.

    b. The District told Dr. Thomas she would also have an opportunity to take these trainings but continually denied her these opportunities.

16. When Dr. Thomas had an investigation involving Title IX issues, she went to her fellow District Coordinators for help. Ms. Medina and Ms. Long, however, refused to help Dr. Thomas and treated her as if she were stupid—despite knowing Dr. Thomas had not received Title IX training.

17. Fidel Montero, the District's Assistant Superintendent, frequently provided Ms. Medina and Ms. Long individualized instruction, coaching, and guidance. Dr. Montero never provided this type of mentorship to Dr. Thomas.

18. Ms. Medina and Ms. Long treated Dr. Thomas as a subordinate, rather than a colleague.

    a. About a month into Dr. Thomas' employment at the District, the OEO hosted a training for administrators. During the training, Ms. Medina gave Dr. Thomas a handful of garbage and instructed her to clean up trash—during what was supposed to be an opportunity for Dr. Thomas to meet and get to know the administrators she would be working with.

    b. When Dr. Thomas refused, because it was not her job, Ms. Medina was furious.

    c. On another occasion, Ms. Medina came into Dr. Thomas' office while Dr. Thomas was meeting with Ken Auld, the-then Director of the OEO, and proceeded to yell

at Dr. Thomas for assigning one of Dr. Thomas' cases to one of Ms. Medina's School Coordinators.

d. Mr. Auld was in fact the one who assigned the case to Ms. Medina's School Coordinator. Even after Mr. Auld told Ms. Medina he had assigned the case to the Coordinator, Ms. Medina continued to be hostile toward Dr. Thomas about the case.

e. Due to this incident, Mr. Auld required Ms. Medina and Dr. Thomas to attend mediation, where Ms. Medina acknowledged that she bossed Dr. Thomas around when it was not her place to do so.

f. Ms. Medina also admitted to having a grudge against Dr. Thomas, because she felt Dr. Thomas did not have the same "work ethic." Ms. Medina also admitted she had been looking for reasons to validate this grudge.

g. Ms. Medina and Ms. Long continued to boss Dr. Thomas around and blame her for things that were not her fault.

h. Dr. Thomas did not attend a colleague's holiday party, because she knew Ms. Medina and Ms. Long would be in attendance and felt that she would not be welcomed.

**Ms. Alder Targets Dr. Thomas**

19. The DOJ settlement agreement also required the District to hire a third-party consultant to (among other things) review its harassment policies and procedures, create trainings for District employees, monitor the District's progress, and make recommendations to the District to help it meet the requirements of the agreement.

20. The District hired Heidi Alder as its OEO Consultant.

21. On July 1, 2022, Dr. Thomas attended a training by Ms. Alder. During the training, Ms. Alder discussed the DOJ's investigation into racial discrimination within the District.

22. At this training, Ms. Alder stated that her first reaction to the DOJ's findings was, "No, this is not happening, this cannot be true."

23. Dr. Thomas challenged Ms. Alder and asked her why that was her first reaction when the investigation painted a clear picture of issues within the District.

24. Ms. Alder responded that she had never heard anyone in the District say the "N-word" and therefore it was difficult for her to believe racism was present in the District.

25. From that point on, Ms. Alder demonstrated hostility towards Dr. Thomas.

26. In February 2023, Ms. Alder changed the findings of an investigation Dr. Thomas had sent Ms. Alder for review.

   a. The investigation involved a student teacher that told a Black student, "I don't call on monkeys, I call on students" after the student had raised his hand and said "ooh, ooh, me, I know" in response to the student teacher's question.

   b. Dr. Thomas' report found that calling a Black student a monkey was a violation of the District's policy against racial harassment.

   c. Ms. Alder determined that instead, the student teacher made the comment because the Black student made "monkey-like noises" when he raised his hand.

   d. Ms. Alder changed Dr. Thomas' report to reflect no violation of District policy.

   e. Reviewing and changing the findings of an OEO report was not within the job duties of the OEO Consultant outlined in the DOJ settlement agreement.

27. On February 1, 2023, Dr. Thomas was presented with a Letter of Concern from Mr. Auld that was mostly comprised of complaints from Ms. Alder, who was not in a position of supervision over Dr. Thomas. These complaints were also contrary to the general feedback Dr. Thomas had been receiving from Mr. Auld.

28. The Letter of Concern stated that Dr. Thomas' investigations lacked "the thoroughness needed to make reasonable conclusions," even though Dr. Thomas had been receiving consistently good feedback on her reports and investigations at this time.

29. Another area outlined in the Letter of Concern was Dr. Thomas' use of unprofessional language in the office.

30. Dr. Thomas acknowledged that she had used curse words that could be considered "unprofessional." However, such language was commonplace in the OEO and used constantly by other employees in the office, yet Dr. Thomas was the only employee disciplined for it.

31. Dr. Thomas wrote a formal response to the Letter of Concern that proposed ways to ensure her performance met expectations. Dr. Thomas, however, never received a response.

32. The District did not bring any other performance concerns to Dr. Thomas' attention.

**The District Terminates Dr. Thomas' Employment**

33. On April 27, 2023, the District provided Dr. Thomas a Notice of Provisional Employment Contract Non-Renewal ("the Non-Renewal").

34. The District gave no reason for its decision not to renew Dr. Thomas' contract.

35. The Non-Renewal was addressed to "Ms. Thomas," rather than Dr. Thomas. The District consistently refused to acknowledge Dr. Thomas' academic achievements and undercut her qualifications by frequently failing to address her by her appropriate title.

36. On May 2, 2023, Dr. Thomas set up a meeting with Suzi Jensen, the District's Director of Human Resources, for May 5, 2023.

37. Dr. Thomas told Ms. Jensen that she was being subjected to race discrimination and wanted to discuss this in their meeting.

38. Dr. Thomas also told Ms. Jensen that she did not want to put the May 5th meeting on her calendar for fear of retaliation.

39. Fifteen minutes before Dr. Thomas was supposed to meet with Ms. Jensen, Dr. Montero called Dr. Thomas into his office.

40. Rodney Rose, the Associate Director of Human Resources, was also in Dr. Montero's office.

41. Dr. Montero put Dr. Thomas on administrative leave, ostensibly pending "an investigation of a violation of standards of ethical, moral, or professional conduct."

42. Dr. Montero refused to provide Dr. Thomas any details about the allegations against her except "that her colleagues were feeling unsafe with her in the office."

43. Dr. Thomas did not learn of any specific allegations against her until more than ten days later, via a letter Dr. Montero sent her.

44. The letter alleged that Dr. Thomas made offensive comments about the OEO staff. The examples Dr. Montero provided were either entirely false or significantly misconstrued.

45. Per Dr. Montero's request, Dr. Thomas provided a written response to the letter.

46. The District did not interview or follow up with Dr. Thomas regarding the "investigation."

47. The District never completed the alleged investigation into the allegations against Dr. Thomas.

48. Rather, the District just left Dr. Thomas on paid administrative leave for the remainder of her contract—nearly two months.

49. On June 28, 2023, Dr. Thomas emailed Ms. Jensen and asked about the results of the investigation. Ms. Jensen responded:

> "Please note that your provisional contract was non-renewed as per your notification signed and dated by you on April 28, 2023. As a result of the recent investigation, there was no disciplinary action taken against you. Therefore, the District considers this matter now closed."

50. On July 4, 2023, Dr. Thomas again emailed Ms. Jensen about the findings of the investigation.

51. Ms. Jensen did not respond.

52. On August 23, 2023, Dr. Thomas emailed Ms. Jensen a third time about the District's investigation findings. Ms. Jensen responded:

> "The investigation was not completed before your non-renewal date. I have no further information for you. Paid leave is not disciplinary, and no actions were brought against you. As I stated in my first email, the District considers the matter closed."

53. In 2023, Dr. Thomas was the only OEO employee whose contract the District decided not to renew.

**FIRST CAUSE OF ACTION**
**(Race Discrimination in Violation of 42 U.S.C. § 1981, against all Defendants)**

54. Dr. Thomas realleges and incorporates by reference all paragraphs set forth above.

55. As a Black woman, Dr. Thomas is a member of a protected class under 42 U.S.C. § 1981.

56. Defendants subjected Dr. Thomas to disparate treatment when they denied her adequate training, held her performance to a higher standard than her non-Black and lighter

skinned coworkers, and disciplined her for the same "unprofessional behavior" that her non-Black and lighter-skinned coworkers were permitted to exhibit.

57. The District allowed Dr. Thomas' coworkers to subject her to a hostile work environment. Even after the District asked Dr. Thomas to engage in a mediation with Ms. Medina, she and Ms. Long continued to treat Dr. Thomas with hostility and disrespect, and Defendants took no action to address this continuing conduct.

58. Dr. Thomas was subject to an adverse employment action when Defendants elected to not renew her contract for the 2023-2024 year.

59. As described in the preceding paragraphs, the circumstances surrounding the District's decision to not renew Dr. Thomas' contract give rise to an inference of race discrimination.

60. The District's "persistent failures to respond" to discrimination extended not only to its student body but to its employees as well, creating a policy or custom, pursuant to which the District decided not to renew Dr. Thomas' contract.

61. Defendants Ms. Alder, Ms. Jensen, and Dr. Montero acted willfully and/or with reckless disregard for Dr. Thomas' federally protected rights, and as such Dr. Thomas is entitled to recover punitive damages against them in their individual capacities in such amounts as a jury may determine at trial.

   a. Ms. Alder, Ms. Jensen, and Dr. Montero are professionals in law, human resources, and/or administration, and therefore, knew or should have known that subjecting Dr. Thomas to disparate treatment on the basis of her race violated her federally protected rights.

b. Ms. Alder's baseless complaints about Dr. Thomas' reports influenced the District's decision to not renew her contract.

c. Ms. Alder's criticisms of Dr. Thomas were not based on her actual performance and Ms. Alder did not hold Dr. Thomas' non-Black and lighter skinned coworkers to the same standards, thus creating an inference of racial animus.

d. Ms. Jensen and Dr. Montero, based on information and belief, were involved in the decision to not renew Dr. Thomas' contract.

62. As a result of Defendants' actions, Dr. Thomas has suffered, and will continue to suffer, both economic and non-economic losses that she is entitled to recover.

**SECOND CAUSE OF ACTION**
**(Violation of the Equal Protection Clause, under 42 U.S.C. § 1983, against all Defendants)**

63. Dr. Thomas realleges and incorporates by reference all paragraphs set forth above.

64. Defendants acted under color of state law when committing the acts outlined above.

65. As alleged above, Defendants treated Dr. Thomas worse than her non-Black and lighter-skinned coworkers, held her to a higher standard, and singled her out for nonrenewal of her contract in 2023.

66. Defendants' conduct violated clearly established rights of equal protection, of which a reasonable person—and certainly three legal, human resources, and/or administrative professionals—would have known.

67. Ms. Jensen and Dr. Montero were officials with final policy making authority over Dr. Thomas' employment.

68. Based on information and belief, Ms. Jensen and Dr. Montero made the decision to not renew Dr. Thomas' contract and used Ms. Alder's complaints about Dr. Thomas as a basis for that decision.

69. Alternatively, Defendants acted pursuant to a policy of perpetuating racial discrimination and harassment.

70. The District ratified the decision to not renew Dr. Thomas' contract, and/or allowed its employees to not renew the contract pursuant to its policy of perpetuating racial discrimination and harassment.

71. As a result of Defendants' violation of Dr. Thomas' right to equal protection, she has suffered and will continue to suffer both economic and non-economic losses that she is entitled to recover.

72. Defendants Ms. Alder, Ms. Jensen, and Dr. Montero acted willfully and/or with reckless disregard for Dr. Thomas' constitutionally protected right to equal protection, and as explained above, Dr. Thomas is entitled to recover punitive damages against them in their individual capacities in such amounts as a jury may determine at trial

## REQUEST FOR JURY TRIAL

Plaintiff requests that this matter be tried before a jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Dr. Thomas respectfully requests that the Court enter judgement in her favor and against Defendants, and award the following relief:

1. Back and front pay, and any other pecuniary losses, in amounts to be determined at trial;
2. Compensatory and consequential damages;

3. Appropriate equitable relief, including but not limited to reinstatement and clearing of any negative information in Dr. Thomas' employment record;

4. Punitive damages, in substantial, appropriate, and reasonable amounts;

5. Pre- and post-judgment interest at the highest lawful rate;

6. Attorneys' fees and costs of this action, as applicable; and

7. Any such further relief as justice allows.

DATED this 9th day of January, 2024.

                                 **HOLLINGSWORTH LAW OFFICE, LLC**

/s/ Katie Panzer
April L. Hollingsworth
Katie Panzer
Whitney Nelson
*Attorneys for Plaintiff*